IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RYAN JACKLIN,

        **Petitioner,**

v.

        Case No. 3:22-CV-671-NJR

THOMAS LILLARD,

        **Respondent.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Ryan Jacklin, an inmate of the Federal Bureau of Prisons (BOP) currently housed at Federal Correctional Institution Greenville, brings this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge the BOP's calculation of his sentence. (Doc. 1). Specifically, Jacklin alleges the BOP failed to give him credit for time served in state custody. (*Id.*). Upon review of the entire record, Jacklin's motion is granted in part and denied in part.

### BACKGROUND

From early 2015 through early 2017, Jacklin served multiple stints in jail in multiple Illinois counties for possession of methamphetamine, unlawful use of weapons, and aggravated fleeing, among other things. (Doc. 8-1). On March 23, 2017, Jacklin was sentenced by the Circuit Court of Washington County, Illinois, to a term of two years' imprisonment on two counts, to run concurrently. (*Id.* at pp. 3, 15). The Judgment specifically provided that the sentences would be served at 50% pursuant to 730 ILCS

5/3-6-3 and that Jacklin would receive 75 days of credit for time served.[1] (*Id.* at p. 23). Imposition of Jacklin's sentence was delayed one day to March 24, 2017. (*Id.*).

On April 24, 2017, one month into his state sentence, Jacklin was taken into temporary custody of the United States Marshals Service (USMS) pursuant to a federal writ of habeas corpus *ad prosequendum* in federal court. Jacklin was admitted to the Saline County Detention Center that same day. (Doc. 8-1 at p. 29). On September 19, 2018, Senior District Judge J. Phil Gilbert sentenced Jacklin to 144 months' imprisonment on Count 1, possession with intent to distribute methamphetamine, and Count 4, conspiracy to manufacture and distribute methamphetamine, to run concurrently. Case No. 17-CR-40026-JPG, Doc. 54. He also sentenced Jacklin to 60 months' imprisonment on Count 3, possessing a firearm in furtherance of a drug trafficking crime, to run consecutive to the sentence in Counts 1 and 4, for a total of 204 months' imprisonment. *Id.* Jacklin remained in temporary USMS custody at the Saline County Detention Center until January 18, 2019, when he was moved to the Marion County Jail for four days. (Doc. 8-1 at p. 29). On January 22, 2019, Jacklin entered FCI Greenville. (*Id.*).

Records from the Illinois Department of Corrections (IDOC) Offender Tracking System show that Jacklin was released on parole on January 9, 2019. (Doc. 8-1 at pp. 43, 45). The BOP thus computed Jacklin's federal sentence to begin on January 9, 2019. (*Id.* at p. 50). The BOP also credited Jacklin with 322 days for time spent in custody that was not attributed to any sentence: January 26, 2015 to June 3, 2015; September 3, 2015; April 11,

---

[1] The specific dates of custody for which Jacklin received credit were September 4, 2015 to September 10, 2015; May 8, 2016 to June 16, 2016; and September 23, 2016 to October 20, 2016.

2016 to May 7, 2016; September 12, 2016 to September 22, 2016; and October 21, 2016 to March 23, 2017.

With his habeas corpus petition, Jacklin asks the Court to credit him for additional time that he served in custody. Specifically, Jacklin asserts the BOP has failed to credit the 75 days that the Washington County court credited to his state sentence. He also claims he should receive credit for the 667 days spent in custody from March 24, 2017, to January 9, 2019.

## LEGAL STANDARD

A petitioner may bring a petition under 28 U.S.C. § 2241 to challenge the fact or duration of the petitioner's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). The Attorney General, acting through the BOP, calculates a defendant's sentence "as an administrative matter when imprisoning the defendant." *United States v. Wilson*, 503 U.S. 329, 335 (1992). An inmate can challenge the calculation of his sentence, including the application of time credits, in a § 2241 petition. *Setser v. United States*, 566 U.S. 231, 244 (2012). Respondent acknowledges that a § 2241 petition is the appropriate means for Jacklin to challenge the BOP's computation of his sentence. (Doc. 22).

## DISCUSSION

Generally, the BOP's sentencing calculation is governed by 18 U.S.C. § 3585, which provides that a federal prison sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Section 3585(b) allows a defendant to receive credit for time served spent in

official detention prior to the date the sentence commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence. 18 U.S.C. § 3585(b).

The BOP is authorized to determine when a sentence begins to run. *Barron v. Lillard*, No. 22-CV-02529-SPM, 2024 WL 379987, at *2 (S.D. Ill. Feb. 1, 2024). "The question of when a federal sentence begins to run is governed by 18 U.S.C. § 3585(a) and by the doctrine of primary custody." *Id.* (citing *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018)). This rule dictates that "an inmate's federal sentence may only commence after the government exercises primary jurisdiction over him." *Id.*

"In general, the sovereign that first arrests a defendant takes primary custody over him" and retains primary custody until relinquishing it. *Pope*, 889 F.3d at 415. "Because the decision to relinquish primary custody rests solely with the sovereign exercising priority . . . [a court] look[s] to the intent of that sovereign to determine if it has relinquished primary custody through a transfer." *Id.* The transfer of a prisoner pursuant to a writ of habeas corpus *ad prosequendum*, in itself however, does not operate as a transfer of primary custody. *Jake v. Herschberger*, 173 F.3d 1059, 1061 n.1 (7th Cir. 1999).

### A. Credit for Time Served in 2018 and 2019

In this case, the IDOC retained primary custody of Jacklin until it released him on parole on January 9, 2019. The BOP then gained primary custody of Jacklin, and his federal sentence began that same day. Jacklin now argues he should receive credit for the time he spent in custody from March 24, 2017, to January 9, 2019.

Respondent Thomas Lillard, Warden of FCI Greenville, initially disagreed that Jacklin should receive any additional credits toward his federal sentence. Respondent argued that the 667 days Jacklin spent in custody from March 24, 2017, to January 9, 2019, went toward his two-year state sentence, even if he spent the majority of that time in the temporary custody of the USMS pursuant to a writ of habeas corpus *ad prosequendum*. (Doc. 8). And because 18 U.S.C. § 3585(b) only allows a defendant to receive prior custody credit if that time served did not go toward any other sentence, Jacklin would not be entitled to any additional credit toward his federal sentence.

In reply, however, Jacklin pointed out that he was sentenced in Washington County, Illinois, to two years on Count 1 and Count 2, to run concurrently "at 50% w/75 days credit." (Doc. 9). Thus, when his sentence was imposed on March 24, 2017, he had only 290 days to serve (365 total days – 75 days of credit). Jacklin argued he should have been paroled from Illinois state custody in January 2018 rather than January 9, 2019, and insisted he was owed credit for the time he served from January 2018 to January 2019. *Id.*

Upon review of the parties' briefing and the record, the Court found some credence in Jacklin's argument. The Court observed that if Jacklin was truly serving his state sentence the entire time he was in USMS custody on his federal writ, then he served 657 days on his state sentence (March 24, 2017 to January 9, 2019). But, by statute, Jacklin was to serve only 50 percent of his two-year sentence. Additionally, the Washington County Court found that Jacklin was to receive 75 days of credit for his time served in state custody, for a total sentence of 290 days. The Court ordered additional briefing on this issue. (Doc. 20).

In its supplemental brief, Respondent states that, upon receiving the Court's order, the BOP further communicated with the IDOC. (Doc. 22). It discovered that, for unknown reasons, the IDOC did not review Jacklin's sentence until December 26, 2018, when it realized his "projected out date" was January 10, 2018—*i.e.*, nearly *a year prior*. (*Id.*). Upon realizing that Jacklin was well past his "projected out date" and nearing his "mandatory out date" of January 10, 2019, the IDOC undertook efforts to initiate his parole. (*Id.*). Jacklin was then formally paroled and released from IDOC custody on January 9, 2019.

The IDOC's sentence computation treats Jacklin as having served his state-level sentence between March 24, 2017, and January 10, 2018. (*Id.*). In other words, the time Jacklin served after January 10, 2018, did *not* count toward his state sentence. The IDOC does not consider Jacklin's time spent in custody between January 11, 2018, and his formal parole on January 9, 2019, to be "lost time," but an IDOC representative admitted one "could look at it that way." (Doc. 22-1 at p. 7).

Based on this new information, Respondent acknowledges that Jacklin did not receive credit toward any sentence—state or federal—for time served in USMS custody between January 11, 2018 and January 9, 2019. (Doc. 22). Accordingly, pursuant to § 3585(b), BOP has now applied an additional 363 days of prior custody credit toward Jacklin's federal sentence. (*Id.* at pp. 4-5). Taken together, Jacklin has now received a total of 685 days of prior custody credit. His new projected release date is September 29, 2031.[2] (*Id.* at p. 5).

While Jacklin is entitled to, and has now received, credit for time served between

---

[2] Jacklin's projected release date prior to the application of these credits was September 12, 2032. (Doc. 8-1 at p. 48).

January 11, 2018 and January 9, 2019, he is not entitled to any additional credit for time served between March 24, 2017 and January 10, 2018, as that time went toward his state sentence. *See* 18 U.S.C. § 3585(b).

      B.     <u>**Credit for 75 Days Spent in State Custody Between 2015 and 2017**</u>

In his petition, Jacklin also seeks credit for the 75 days he spent in state custody between 2015 and 2017. But, as noted above, § 3585(b) only allows a defendant to receive credit for time spent in custody if that time has not been credited toward any other sentence. Jacklin requests prior custody credit for September 4, 2015, to September 10, 2015; May 8, 2016, to June 16, 2016; and September 23, 2016, to October 20, 2016, but these timeframes were explicitly credited by the Washington County court toward his state court sentence. (Doc. 1 at p. 12). Therefore, § 3585(b) prohibits these 75 days from also being credited toward Jacklin's federal sentence. This portion of his petition is denied.

CONCLUSION

For these reasons, the Court **GRANTS in part and DENIES in part** the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 by Petitioner Ryan Jacklin. Because the Bureau of Prisons has already adjusted Jacklin's sentence to apply an additional 363 days of prior custody credit, no additional action is required.

The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:   August 2, 2024

                                                  **NANCY J. ROSENSTENGEL**
                                                  **Chief U.S. District Judge**